# No. 19-3234

## United States Court of Appeals

## for the Tenth Circuit

### ERIC S. CLARK

Plaintiff-Appellant
v.
Unified School District No. 287

Defendant-Appellee

Appeal from the U.S. District Court

for the District of Kansas

The Honorable Holly L. Teeter, District Judge

( 2:17-cv-02279-HLT )

### BRIEF OF APPELLANT

**Eric S. Clark ( pro se )**
1430 Dane Ave
Williamsburg, Kansas 66095
Phone: (785) 214-8904

ORAL ARGUMENT : 15 min.

# No. 19-3234

## United States Court of Appeals

## for the Tenth Circuit

### ERIC S. CLARK

Plaintiff-Appellant
v.
Unified School District No. 287

Defendant-Appellee

Appeal from the U.S. District Court

for the District of Kansas

The Honorable Holly L. Teeter, District Judge
( 2:17-cv-02279-HLT )

### BRIEF OF APPELLANT

**Eric S. Clark ( pro se )**
1430 Dane Ave
Williamsburg, Kansas 66095
Phone: (785) 214-8904

ORAL ARGUMENT : 15 min.

ii

# **CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1,

Plaintiff-Appellant hereby states that no corporation is involved

concerning the Appellant of this case.

iii

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ............................... ii

TABLE OF CONTENTS ........................................................... iii

TABLE OF AUTHORITIES ........................................................... v

PRIOR OR RELATED APPEALS ………………………………….. vii

JURISDICTIONAL STATEMENT ............................................. 1

STATEMENT OF THE ISSUES ................................................. 1

STATEMENT OF THE CASE .......................................................... 2

SUMMARY OF ARGUMENT ..................................................... 2

**ARGUMENT** …………………………………………….……. 3

**ISSUE I.** …………………………………………………….……… 3

The District Court erred by 1) improperly drawing inferences

( or finding of fact(s) not offered by any party) in favor of the

movant rather than the nonmovant and; 2) finding lack of standing

on Clark's First Amendment claim and; 3) failing to apply the

objective standard for a chilling effect by not addressing how the

government action would affect a person of ordinary firmness.

iv

**ISSUE II.** ……………………………………………………… 18

The District Court erred by narrowly construing the Pretrial order

to preclude a facial overbreadth challenge to a policy.

**CONCLUSION / RELIEF** …………………………………….... 26

REQUEST FOR ORAL ARGUMENT …………………………..... 27

CERTIFICATE OF COMPLIANCE WITH PRIVACY …….…..... 28

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ………..... 29

CERTIFICATE OF SERVICE ……………………………….….. 30

v

# TABLE OF AUTHORITIES

## U.S. CONSTITUTION

U.S. Const., amend I

## FEDERAL SUPREME COURT CASES

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) … 9

*Martin v. Wilks*, 490 U.S. 755 (1989) …………………………..… 18

*Susan B. Anthony List*, 573 U. S. 149 (2014) …………………………6,7,9

## FEDERAL TENTH CIRCUIT

*Buell Cabinet Co. v. Sudduth*, 608 F.2d 431 (10th Cir. 1979) ……… 4

*Christian Heritage Acad. v. Okla. Secondary Sch.*
    *Activities Ass'n*, 483 F.3d 1025 (10th Cir. 2007) ……………. 4

*D.L.S. v. Utah*, 374 F.3d 971 (10th Cir. 2004) ………………………. 5

*Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012) ………. 24

*Eck v. Parke, Davis & Co.*, 256 F.3d 1013 (10th Cir. 2001) …………. 4

*Initiative & Referendum Inst. v. Walker*,
    450 F.3d 1082 (10th Cir. 2006) ………………………………. 5

*Law Co. v. Mohawk Constr. Supply Co.*
    577 F.3d 1164 (10th Cir. 2009) ………………………………. 21

*Lurch v. United States*, 719 F.2d 333 (10th Cir. 1983) ………….. 19,21

*Merida Delgado v. Gonzales*, 428 F.3d 916 (10th Cir. 2005) ………. 3

vii

# PRIOR OR RELATED APPEALS

There are no prior or related appeals concerning this case.

## JURISDICTIONAL STATEMENT

This District Court had jurisdiction over this case under the Constitution of the

United States, Article III § 2 and pursuant to 28 U.S.C. § 1331 (federal question).

This Court of Appeals has jurisdiction over this case pursuant to 28 U.S.C. § 1291.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331(federal question).

This appeal arises from a **final decision of the District Court.** See the

(summary judgment) Order, ECF 161 [ROA VOL. 2 at 105], dated April 24, 2019

and the Judgment, ECF 186 [ROA VOL. 2 at 217], dated August 19, 2019.

## STATEMENT OF THE ISSUES

### ISSUE I.

The District Court erred by 1) improperly drawing inferences

( or finding of fact(s) not offered by any party) in favor of the

movant rather than the nonmovant and; 2) finding lack of standing

on Clark's First Amendment claim and; 3) failing to apply the

objective standard for a chilling effect by not addressing how the

government action would affect a person of ordinary firmness.

### ISSUE II.

The District Court erred by narrowly construing the Pretrial order

to preclude a facial overbreadth challenge to a policy.

1

## STATEMENT OF THE CASE

The case involved two plaintiffs (HIRT and CLARK), each with separate

First Amendment claims. The District Court denied the motion for summary

judgment by Defendant/Appellee ("USD 287") on HIRT's First Amendment claim

but granted the summary judgment motion of USD 287 regarding the First

Amendment claim of Plaintiff/Appellant ("CLARK") and dismissed CLARK's

State law claims without prejudice, finding lack of jurisdiction. The District Court

set Plaintiff HIRT's First Amendment claim for trial but plaintiff HIRT

subsequently settled at mediation which prompted dismissal of the action and

entry of final judgment.

## SUMMARY OF ARGUMENT

The main issue for review in this case is error concerning standing for

CLARK's First Amendment claim at summary judgment. Standing and application

of the summary judgment standard are intertwined but both are matters of law and;

thus, review will be de novo. A directly related issue concerns error in precluding

a facial overbreath challenge to a policy, standing at summary judgment being a

predicate issue.

CLARK argues that misapplying the summary judgment standard was clear

error in that the analysis improperly drew inferences in favor of the movant rather

than the nonmovant and/or misapprehended the facts and; the District Court's

2

failing to apply the objective standard for a chilling effect injury was clear error

in that it did not properly address the "government action" and the effect that

would have on a person of ordinary firmness in CLARK's position. These errors

resulted in the error of finding a lack of standing. In addition, the District Court

erred in determining that a facial overbreadth challenge to a policy was waived by

errantly construing the Pretrial order to exclude a determination on the merits.

## ARGUMENT

### ISSUE I.

The District Court erred by 1) improperly drawing inferences

( or finding of fact(s) not offered by any party) in favor of the

movant rather than the nonmovant and; 2) finding lack of standing

on Clark's First Amendment claim and; 3) failing to apply the

objective standard for a chilling effect by not addressing how the

government action would affect a person of ordinary firmness.

### *STANDARD OF REVIEW*

A District Court's dismissal for lack of standing is reviewed de novo.

*Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

The general rule is that "[i]n the First Amendment context, the standing

requirements are somewhat relaxed." *McConnell v. Fed. Election Comm'n*,

251 F. Supp. 2d 176, 258 (D.D.C. 2003); *aff'd* 540 U.S. 93 (2003).

3

"[R]eview de novo the entry of summary judgment and draw all reasonable inferences in the nonmovants' favor." *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001).

"All disputed facts must be resolved in favor of the party resisting summary judgment." *White v. Gen. Motors Corp.*, 908 F.2d 669, 670 (10th Cir. 1990). "We review the district court's grant of partial summary judgment *de novo*, applying the same legal standards as the district court." *Qwest Corp. v. AT & T Corp.*, 479 F.3d 1206, 1209 (10th Cir. 2007).

"Where, as here, we are presented with cross-motions for summary judgment, we 'must view each motion separately,' in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Manganella v. Evanston Ins. Co.*, 702 F.3d 68, 72 (1st Cir. 2012) (quoting *OneBeacon Am. Ins. Co. v. Commercial Union Assurance Co. of Can.*, 684 F.3d 237, 241 (1st Cir. 2012))(emphasis added); *see also Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) ("Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." (quoting *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979))).

Review of existence of standing at summary judgment for a chilling effect

4

involves determining whether the government action would chill a person

of ordinary firmness. See *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

## *ARGUMENT*

Lack of standing  was raised by Defendant/Appellee ("USD 287").

See ECF 149 at 2 [ROA VOL. 1 at 956], "Clark lacks standing to assert a personal

claim of a First Amendment violation." and CLARK responded to that issue as

non-movant. See ECF 155 at 35 [ROA VOL. 1 at 1167].

The District Court ruled on the issue in ECF 161 at 20 [ROA VOL. 2 at 124]:

> "Clark has not shown an injury that would justify standing for a First
> Amendment claim, and this Court therefore lacks jurisdiction because
> there is not valid case or controversy. Clark's claims are therefore
> dismissed without prejudice."

First, the District Court properly identified that:

> "[i]n the First Amendment context, a plaintiff may demonstrate an
> injury by showing that a statute or **other action** had a chilling effect
> on his speech. *Ward*, 321 F.3d at 1267. But subjective chilling is not
> enough. *Id.* Rather, the "chilling effect on the exercise of a plaintiff's
> First Amendment rights may amount to a judicially cognizable injury
> in fact, as long as it 'arise[s] from an **objectively justified fear of real
> consequences**.'" *Initiative & Referendum Inst.*, 450 F.3d at 1088
> (quoting *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004))."
> ECF 161 at 19 [ROA VOL. 2 at 123] (emphasis added)

CLARK suffered injury-in-fact from self censorship caused by the chilling effect

of a policy. See ECF 155 at 11, ¶¶14,15 [ROA VOL. 1 at 1143]):

> "14. But for the restrictions imposed by the exclusion order (ECF No.
> 93-1) against Mr. Hirt, Mr. Clark would not have self censored his

5

speech at the school board meeting held August 12, 2015 like he did, fearing the same or similar facially unconstitutional action being taken against him for his expression at the meeting. (See ECF 114-13, p. 2 at ¶4)

15. After witnessing the removal of Mr. Hirt under threat of criminal sanctions on August 19. 2015, Mr. Clark continued to self censor his speech by intentionally not attending school board meetings held between August 20, 2015 and June 14, 2017 when he would have otherwise attended and spoken during the Patron Forum of school board meetings but for the enforcement of the exclusion order (ECF No. 93-1) issued against Mr. Hirt, fearing the same or similar facially unconstitutional action being taken against him for his expression at USD 287 School Board meetings. See ECF 114-13, p. 2 at ¶5."

A look at *Susan B. Anthony List*, 573 U. S. 149 (2014) reveals facts that consisted of an action taken against Petitioner A (SBA) who then pursued suit to challenge the action. Petitioner B (COAST) then filed suit challenging the basis of the action against Petitioner A by alleging that it (Petitioner B) had **planned to engage in the same activity but refrained due to the action against Petitioner A.** The facts of this case are substantively no different in regard to standing: an action taken against HIRT who then pursued suit to challenge the action and; CLARK filed suit challenging the basis used to take action against HIRT by alleging that CLARK **planned to engage in the same activity but refrained due to the policy and action enforced against Petitioner Hirt.** That SBA and COAST filed separate suits while HIRT and CLARK filed a joint suit is immaterial as they could have

6

each filed separately but chose to file jointly as a matter of economy, not only of themselves but of the court. There can be no closer fact matching to the case of *Susan B. Anthony List* – and a unanimous Supreme Court held that "Petitioners have alleged a sufficiently imminent injury for Article III purposes." and that "Petitioners have alleged a credible threat of enforcement" *Id.* at Syl.   The U.S. Supreme Court has held that threatened enforcement creates an Article III injury unless there are affirmative assurances of refrain from actors responsible for enforcement. In the context of standing, "too speculative" to be a "credible threat" means something even less than "remotely possible". There certainly is no requirement to receive a personal warning or threat.

CLARK argued the necessary showing for standing. See ECF 155 at 35-36 [ROA VOL. 1 at 1167-1168], stating, and referencing facts:

"Mr. Clark holds the sincere belief that there is no substantial difference between his manner of expression at USD 287 School Board meetings and the manner used by Mr. Hirt (See PSOF ¶ 19). Mr. Clark became aware of the exclusion order (ECF No 93-1) dated July 13, 2015 through the publication of quotes from the letter in the Ottawa Herald newspaper (See PSOF ¶16). Mr. Clark self censored his speech at the school board meeting held August 12, 2015 because of enforcement of the exclusion order issued against Mr. Hirt, fearing the same or similar facially action being taken against him for his expression at USD 287 School Board meetings. (See PSOF ¶14). On on August 19, 2015, during an Open House event at Williamsburg Elementary School, Mr. Clark personally witnessed Mr. Hirt being asked to leave USD 287 property under threat of criminal sanctions by a Sheriff's deputy. (See PSOF ¶17). After witnessing the removal of Mr. Hirt under threat of criminal sanctions on August 19, 2015, Mr.

7

Clark continued to self censor his speech by not attending USD 287 school board meetings held between August 13, 2015 and June 14, 2017 when he would have otherwise attended and spoken during the Patron Forum of some of those school board meetings but for the exclusion order issued against Mr. Hirt, fearing the same or similar action being taken against him for his expression. (See PSOF ¶15)."

Note: the referenced facts found within PSOF ¶¶14-19 are in the record. See ECF 155 at 11-12[ROA VOL. 1 at 1143-1144].

The District court erred in concluding that 'Clark has not demonstrated that the July 13 exclusion letter to Hirt caused an "objectively justified fear of real consequences" as to him.' ECF 161 at 20 [ROA VOL. 2 at 124] and; more specifically, the court erred by inferring or concluding that "[t]he **only support** for Clark's claim is his own statements that he self-censored and feared the same action would be taken against him. Doc. 155 at 36." ECF 161 at 20 [ROA VOL. 2 at 124] (emphasis added) This statement of the District Court is in error because it does not account for the **facts** that were proffered in **support**.

One **fact** in **support** being the **action** of applying the *ad hoc* policy to Mr. Hirt with approval of the board. (See ECF 93-1 [ROA VOL. 1 at 427]) That past enforcement of the "socially acceptable manner" expression policy (See ECF 155 at 9, PSOF ¶¶2-4 [ROA VOL. 1 at 1141]) demonstrates a credible threat of the policy being applied to CLARK. See e.g., *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004)(requiring an "objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution

8

or other consequences following from the statute's enforcement"). The threat of prosecution is generally credible where a challenged "provision on its face proscribes" the conduct in which a plaintiff wishes to engage, and the state "has not disavowed any intention of invoking the . . . provision" against the plaintiff. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979). Without affirmative assurances of refrain from actors responsible for enforcement "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotations omitted). This means that there is no requirement to receive a personal warning or threat that the policy would be enforced against CLARK but, rather, the policy with an enforcement history is sufficient for a credible threat of harm to exist. In fact, an injury may be imminent even though contingent upon an unfavorable outcome in litigation. *See Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1299 (10th Cir. 2008) (concluding that "[t]he consequences of a contingent liability . . . may well be actual or imminent" even though "by definition [such liability] **may not arise for a considerable time, if ever**") (emphasis added). It is clear the credible threat of enforcement of a policy does not require a certainty of enforcement but only that the possibility of enforcement could cause a person of ordinary firmness to alter their conduct in some way to conform to the policy. In this case, altering use of speech in some way in order to conform to the policy.

9

The USD 287 board has never issued any affirmative statement disavowing

enforcement for noncompliance with the *ad hoc* policy and; even if the board did

disavow such enforcement going into the future, that would only alleviate

prospective harm, not any of the retrospective harm to CLARK.

Other **facts** which **support** the claim beyond "Clark's own statements"

concerning self censorship include the **fact** of **witnessing** removal of Mr. Hirt

under threat of criminal sanctions and the **fact** of CLARK **refraining** from

attendance at meetings after personally **witnessing** that removal. Both, personally

**witnessing** a policy being actively enforced through threat of criminal sanctions

and then intentionally **refraining** from attendance would be significant facts to

support an "objectively justified fear of real consequences" yet these facts were not

addressed in the District Court's analysis even though there was mention in the

District Court's order that:

> "on August 19, 2015, Hirt and Clark attended an Open House event
> at Williamsburg Elementary School. A sheriff's deputy asked Hirt to
> leave, which he did." ECF 161 at 4 [ROA VOL. 2 at 108].

The factual support above was clearly more support than merely CLARK's

"own statements that he self-censored and feared the same action would be taken

against him." ECF 161 at 20 [ROA VOL. 2 at 124] and; that misapprehension of

facts is clear legal error. Applying those facts to the analysis would provide

10

standing for an actual injury of self-censorship through a chilling effect.

In addition to the errant inference, or conclusion, that

> "[t]he **only support** for Clark's claim is his own statements that he self-censored and feared the same action would be taken against him. Doc. 155 at 36." ECF 161 at 20 [ROA VOL. 2 at 124]

another inference was also improperly drawn in favor of the movant when the

District Court relied on the errant conclusion that "Clark's own actions belie that

he even had a subjective fear of harm, as he did attend a school board meeting

after Hirt was excluded, and he did speak, to no consequence." ECF 161 at 20

[ROA VOL. 2 at 124] (emphasis in original). This drawing of an inference (i.e.,

belie) in favor of the movant at summary judgment by the District Court is clear

legal error because the acts of **attendance and speaking** are not conclusive about

whether the **speaking** part was self-censored.

An actionable chill on speech need not be a chill on all speech but need only

result in self-censoring of any protected speech, even if it is only one word or one

phrase, like "sons of bitches". While that term may be profanity, it does not reach

to the bar of obscenity necessary to strip it of its First Amendment protections.

The fact that CLARK had offered that

> "Mr. Clark holds the sincere belief that there is no substantial difference between his manner of expression at USD 287 School Board meetings and the manner used by Mr. Hirt (See PSOF ¶ 19)." ECF 155 at 35 [ROA VOL. 1 at 1167]

11

and the fact, acknowledged by the District Court that

> 'Hirt also called board members names while in the audience at
> school board meetings, including calling board members "sons of
> bitches." Doc. 149 at 4.' ECF 161 at 3 [ROA VOL. 2 at 107]

and the absence of any fact about CLARK using the term "sons of bitches"

after the enforcement action was taken – from those facts, a reasonable inference

(in favor of non-movant) would be that CLARK was chilled from using that term.

The District Court when presented with this error of failing to draw reasonable

inference simply disagreed that it would be a reasonable inference without

explanation as to why it would not be a reasonable inference other than intimating

that there was a lack any positively asserted fact that CLARK had used the term

before. See ECF 191 at 3 [ROA VOL. 2 at 235]:

> "he[CLARK] argues that the Court should have concluded that, even
> though he attended and spoke at a school board meeting after Hirt was
> excluded, the fact that Clark only used the phrases "nincompoops"
> and "ninnies" instead of "sons of bitches" suggests self-censorship
> sufficient to create a concrete First Amendment injury. Doc. 184 at 9.
> The Court disagrees that this is a reasonable inference. The Court
> notes that there were no facts that Clark ever used the phrase "sons of
> bitches" during school board meetings—that was Hirt. Doc. 161 at 3."

CLARK could certainly be questioned before the trier of fact and asked whether or

not he has ever used the term before, but the more important aspect is that drawing

an inference from **lack** of a facts is **assuming** the answer to the **question of fact**

which is better posed before the trier of fact in order to properly avoid drawing an

inference in favor of the movant rather than the non-movant.

The Court also drew another inference against the non-movant by

emphasizing the word "after" when stating that CLARK:

> 'attended and spoke at a school board meeting <u>after</u>
> Defendants issued the July 13 exclusion letter (and after it
> was partially published in the local newspaper), where he
> referred to school officials—at least hypothetically—as
> "nincompoops" and "ninnies."' (emphasis in original)
> ECF 161 at 19 [ROA VOL. 2 at 123]

Breaking this apart . . . the "after" emphasized by the District Court refers to the

one meeting held August 12, 2015 which was a meeting held after the enforcement

action of issuing an trespass/exclusion notice **but** one week **before** CLARK

witnessed the continued enforcement on August 19, 2019 involving removal of

Mr. Hirt by a Sheriff's deputy under threat of criminal sanctions. What the District

Court did not seem to grasp was that **attending** would not be a violation of the

policy and as to **speaking**, CLARK could self censor his speech during his

speaking at that one meeting so as not to violate the policy – which is exactly what

CLARK asserted that he did. See ECF 155 at 35-36 [ROA VOL. 1 at 1167-1168]:

> "Mr. Clark self censored his speech at the school board meeting held
> August 12, 2015 because of enforcement of the exclusion order issued
> against Mr. Hirt, fearing the same or similar facially action being
> taken against him for his expression at USD 287 School Board
> meetings. (See PSOF ¶14)."

As to the part about CLARK "referred to school officials—at least

13

hypothetically—as "nincompoops" and "ninnies.", the facts do not show that

CLARK referred to any specific board member as a nincompoop as intimated

by the District Court but, regardless (i.e., even assuming that were true), the

intended inference drawn by the District Court appears to be that CLARK should

have thought that such use of those terms would somehow be thought of as being

punishable under the policy -- but that is yet another inference drawn against the

non-movant. A reasonable inference in favor of CLARK as the non-movant would

be that CLARK, though use of the terms nincompoops and ninnies rather than

"sons of bitches" would fall within the policy restriction and; another reasonable

inference would be that mere **attendance and speaking** at a school board

meeting by CLARK, even after the trespass action against Mr. Hirt was taken, does

not categorically mean that the **speaking** was not self-censored. In other words,

use of the terms nincompoop or ninny would actually **support**, rather than **belie**

that self censorship was used. Any categorical conclusion that "use of speech"

must mean that "the speech used is not being self-censored" would be a logical

fallacy and that appears to be what the District Court relied upon. And the

District Court appeared to bolster its reasoning by drawing an inference that

use of terms, such as nincompoop or  ninnies, either shows lack of intent to comply

with the policy or shows actual failure to comply with it. Neither of those are

reasonable inferences in the light most favorable to the non-movant especially

14

when a reasonable inference would be that use of those terms, as compared to "sons of bitches", would show just the opposite – attempted compliance through self censorship.

The key issue here being that when there are counter veiling inferences (i.e., toward the movant or towards the non-movant) that can be drawn from the facts, this is not a <u>legal issue</u> that can be settled **as a matter of law** at summary judgment, rather, it is a <u>fact issue</u> to be left to the trier of fact and; the affidavit of Clark is not to be weighed at the summary judgment stage of litigation, but is the proper duty of the trier of fact at trial to determine which is more believable. In other words, to choose one arguable inference over another necessarily involves a fact determination – i.e., identifying whether or not self censorship occurred. Weighing of testimony and facts (i.e., witnessing removal as part of enforcement, refrain from attendance, use of certain terms when speaking but not others, etc.) is required in this case for any determination about a "chilling effect" and cannot be decided **as a matter of law**. In that vein, the Court properly indicated that standing based on a chilling effect faces an **objective** test (ECF 161 at 19, [ROA VOL. 2 at 123] "objectively justified fear of real consequences"). But then the District Court failed to address whether the government action in this case "would chill a person of ordinary firmness from continuing to engage in" (ECF 161 at 30 [ROA VOL. 2 at 134]) any protected speech. Not all, any.

In *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000), there the

"government action" was *denial of requests for council packets* and the mayor's implementation of a *time limitation* on speech which was viewed by the Tenth Circuit as no more than *de minimis* injuries. That is far different than the "government action" in the present case which action poses a threat of *categorical banning* a person from school property including school board meetings held on the premises simply for use of expression that is not considered "socially acceptable". (See ECF 93-1 [ROA VOL. 1 at 427]). So, the question for the objective standard then being: for a person of ordinary firmness who learned of the categorical ban action enforcing a policy violation based on expression that is not "socially acceptable", would that result in that person of ordinary firmness self-censoring, not <u>all</u> speech, but of self censoring <u>any</u> protected speech?

Chief Judge Robinson (originally assigned to this case) was not shy to assert in an order (ECF 41, p. 9 [ROA VOL. 1 at 267]) that

'Defendants' most recent statement concerning their requirements for patron behavior to be of a different character than their earlier statement barring Hirt due to his failure to express himself in a "socially acceptable manner."'

The "socially acceptable manner" requirement and attendant stern consequence seems to be of a character that would direct even those of extreme firmness to make at least some attempt to comply with the requirement, in other words, to self censor at least <u>some</u> protected speech.

The chilling effect doctrine of prior restraint recognizes the fact that the

16

legal system is imperfect and mandates the formulation of legal rules that reflect our preference for errors made in favor of free speech. Any determination of whether a government action could create a chill on speech must factor in that principle. For a non-movant with a First Amendment claim, that means using the legal rule of drawing inferences in favor of the non-movant and; it was clear legal error to have strayed so far from that well established rule for summary judgment.

Violation of the right to protected speech creates irreparable harm even if the chill is to some (i.e., any, not all) protected speech and when that harm is fairly traceable to the action of enforcing a policy and there is likelihood that the injury will be redressed by a favorable decision (i.e., the policy would be enjoined) any error in assessing standing can become additional harm. And the District Court's drawing inferences against the non-movant and/or misapprehending facts are clear legal error deserving of correction. Such correction would then lead to the necessary evaluation about the constitutionality (liability) for the policy and its effect as a prior restraint. To allow a facially unconstitutional viewpoint based policy restriction on speech to go unchecked because of misapprehending facts about its chilling effect would result in manifest injustice.

While genuinely disputed facts may be disregarded during a summary judgment analysis which results in denial of summary judgment to a moving

party, it is clear legal error to find a lack of standing at summary judgment through

either disregard of genuinely disputed facts or through misapprehension of facts

that would provide standing for a nonmovant. The bar for standing is set very low

for good cause and can be seen in the tacit acknowledgement of the Supreme Court

of the United States that a primary reason is "our 'deep-rooted historic tradition

that everyone should have his own day in court.'" *Martin v. Wilks*, 490 U.S. 755,

762 (1989) (quoting 18 C. WRIGHT, A. MILLER, ET AL., FEDERAL

PRACTICE AND PROCEDURE § 4449, at 417 (1981)). Virtually, the only way

CLARK could lack standing is if, in fact, it were actually *true* that "[t]he **only**

**support** for Clark's claim is his own statements" ECF 161 at 20 [ROA

VOL. 2 at 124] (emphasis added). That is simply not the case in reality when the

facts are properly recognized and inference are drawn in favor of the non-movant

and; this court should reverse the District Court.

## ISSUE II.

The District Court erred by narrowly construing the Pretrial order
to preclude a facial overbreadth challenge to a policy.

### *STANDARD OF REVIEW*

While the decision whether to allow amendment of a Pretrial order is reviewed

under an abuse of discretion standard, determination of whether a Pretrial order has

been properly construed is a question of law; thus, subject to de novo review.

A District Court has no discretion to decide the law incorrectly, including liberal

construction of a Pretrial order.

The legal determination is whether the pre-trial order sufficiently defines the issues

such that the other party is adequately apprised of the issues. See, e.g.,

*Lurch v. United States*, 719 F.2d 333, 339 (10th Cir. 1983)(finding other arguments

"are implicitly within the pre-trial order" and noting that "pre-trial orders have

been construed to include issues not specifically mentioned in the order").

'Pretrial orders are to be "liberally construed to cover any of the legal or factual

theories that might be embraced by their language. We have cautioned that a

pretrial order is a procedural tool to facilitate the trial of a lawsuit on its merits and

not to defeat it on a technicality.' *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818

(10th Cir. 1979).

The primary purpose of pretrial orders is to avoid surprise. *See Wilson v. Muckala*,

303 F.3d 1207, 1216 (10th Cir. 2002).

## *ARGUMENT*

Beginning with a note that is not critical to the analysis but deserves mention:

the District Court ruled that an overbreadth challenge was **waived**. While the terms

**waive** and **forfeit** may have similar results in some circumstances(not present

here), there is nonetheless a distinction in law, a waiver requiring a knowing intent.

The District Court ruled that an overbreadth challenge to the "socially acceptable"

manner of expression policy was waived based on strictly parsed language of

19

the Pretrial Order. See foot note 21 of ECF 161 at 21 [ROA VOL. 2 at 125],

"not reserved any claim regarding the constitutionality of the underlying policies."

and foot note 22 of ECF 161 at 22 [ROA VOL. 2 at 126], where the District Court

stated that:

> 'Plaintiffs also clarify in their reply that they are not making an
> overbreadth challenge to USD 287 policies KGD and KGDA. Doc.
> 156 at 17-18. They do, however, attempt to reserve an overbreadth
> challenge to the so-called "ad hoc" policy they believe was created in
> the July 13 exclusion letter. *Id.* But, as with the other facial claims
> regarding the policies, the Court notes that **there is no such claim in
> the Pretrial Order, and any such claim is therefore waived.** Doc.
> 138 at 9; *Koch*, 179 F.R.D. at 596. " (emphasis added)

Though having raised the issue of unconstitutionality of the *ad hoc* policy

in earlier summary judgment pleadings, the District Court errantly interpreted

the Pretrial Order as excluding that challenge. See, e.g., ECF161 at 21-22 [ROA

VOL. 2 at 125-126]:

> "In that first partial motion, filed on May 29, 2018, **Plaintiffs did list as
> a possible theory** of liability that the **policies were unconstitutional.**
> But they then specifically opted not to pursue that theory in the motion,
> though with the caveat that **the theory was not being abandoned**. But
> when the Pretrial Order was filed on September 21, 2018, some four
> months later, Plaintiffs omitted that as a theory or claim.[21] Because
> Plaintiffs did not pursue it in the first motion and then failed to include it
> in the Pretrial Order, Defendants were justified in assuming that Plaintiffs
> no longer intended to pursue a claim that the policies themselves were
> unconstitutionally vague. **Because the Pretrial Order now controls** the
> scope of this case, it controls what legal claims will be allowed. *Koch*,
> 179 F.R.D. at 596.22 And **this claim is not allowed**." (emphasis added)

Appellate Case: 19-3234    Document: 010110262150    Date Filed: 11/18/2019    Page: 28

This misconstruction of the pretrial order is clear legal error because, under controlling precedent of the Tenth Circuit, a PRE-TRIAL ORDER need not *explicitly* propound every fact or technical component of a legal theory to satisfy the primary purpose of the pretrial order which is to -- avoid surprise. See, e.g., *Lurch v. United States*, 719 F.2d 333, 339 (10th Cir. 1983)(finding other arguments "are **implicitly** within the pre-trial order." and "pre-trial orders have been construed to include issues **not specifically mentioned** in the order") (emphasis added) It is also clear that when a pretrial order is narrowly interpreted to defeat the merits (in part or whole) of a claim based on a technicality of that procedural tool rather than being "liberally construed" to facilitate the trial of a lawsuit on its merits, that is manifest injustice and reversible error. A proper liberal construction of a Pretrial Order would not exclude "**any** of the legal or factual theories that **might be** embraced by the [pretrial order's] language." See, e.g., *Law Co. v. Mohawk Constr. Supply Co.* 577 F.3d 1164, 1171 (10th Cir. 2009):

> "Pretrial orders are to be "liberally construed to cover any of the legal or factual theories that **might be** embraced by their language. We have cautioned that a pretrial order is a procedural tool to facilitate the trial of a lawsuit on its merits and not to defeat it on a technicality." *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 818 (10th Cir. 1979) (quotations omitted). The primary purpose of pretrial orders is to avoid surprise. *See Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002)." (emphasis added)

Causation of CLARK's First Amendment claim to injury is completely based on

the facially unconstitutionality(overbreadth) of the *ad hoc* "socially acceptable

manner" policy' (with additional support for credible threat of harm from the

facially unconstitutional policy being that is was previously enforced). If CLARK

has standing (See ISSUE I above), then CLARK is certainly able to challenge the

policy for facial overbreadth as being the cause of injury. This constitutional

challenge to the policy is clearly encompassed when construing the pre-trial order

under the appropriate liberal construction due based on its language. It is no leap to

conclude that construing the language "unconstitutional facially" (See ECF 138 at

page 9 [ROA VOL. 1 Sup at 13]) **might** encompass a facial challenge to

overbreadth. Acknowledging this would be in keeping with the principle that the

pretrial order should be construed to cover "**any** of the legal or factual theories that

**might be** embraced by the [pretrial order's] language."

Further, the District Court's order in addressing CLARK's first summary

judgment motion stated that

"[t]he same disputed facts that prevent the Court from resolving Plaintiff
Hirt's First and Fourteenth Amendment claims are those that ultimately led
Plaintiff **Clark to pursue** his claims of self-censorship and **overbreadth**."
(emphasis added) ECF 139 at 15 [ROA VOL. 1 at 800].

Clearly, there is no surprise that CLARK intended to pursue a facial overbreadth

challenge and USD 287 never made any claim of any prejudice. The District Court

conclusion that "Plaintiffs omitted that as a theory or claim." ECF 161 at 21 [ROA

VOL. 2 at 125] fails to account for the legal principle that a pretrial order is to be

"liberally construed to cover any of the legal or factual theories that might

22

> makes "an examination of whether the terms of the [policy] itself measured
> against the relevant constitutional doctrine, and independent of the
> constitutionality of particular applications, contain a constitutional infirmity
> that invalidates the [policy] in its entirety." *Taylor v. Roswell Indep. Sch.
> Dist.*, 713 F.3d 25, 39 (10th Cir. 2013) (quoting *Doe v. City of Albuquerque*,
> 667 F.3d 1111, 1127 (10th Cir. 2012)) (alterations in original). Plaintiffs
> have clearly reserved a challenge to the constitutionality of the July 13
> exclusion letter (which is addressed separately in this order); but they have
> not reserved any claim regarding the constitutionality of the underlying
> policies." (emphasis added)

While this division into a "separate question" properly intimates that there is a

difference between a facial challenge to a policy and an as-applied challenge to an

application of the policy,  it seemingly ignores that "pursuant to" was used in the

**pretrial order** along with reference to **both** facial and as-applied. In the context

used, both type of challenges were being referenced. See ECF 138 at page 9 [ROA

VOL. 1 Sup at 13]:

> "if the exclusion order was issued **pursuant to** an *ad hoc*
>  "socially acceptable manner" **policy**, then the trespass notice is
> unconstitutional **facially** and **as-applied**, concerning due process,
> right of free speech"

While the Pretrial Order did not explicitly use the word "respectively", the context

and grammar of that statement dictate that the use of "facially" would refer to

policy itself (i.e., *ad hoc* policy) and the use of "as-applied" would refer to a

specific application of policy (i.e., trespass notice). The District Court having

noted that the trespass notice would fall under an as-applied challenge and

policy could face a facial challenge, that very observation would leave use of

**24**

but the District Court never actually analyzed whether the policy would be
facially unconstitutional for overbreadth. As that analysis consists wholly of
a question of law, this Court could perform that analysis.

## CONCLUSION / RELIEF

The court should reverse the dismissal of Clark's First Amendment claim
and; declare the offending policy is facially unconstitutional and; remand to hold
further proceedings to assess prospective relief (injunction) and damages.

Respectfully submitted,

Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904

# REQUEST FOR ORAL ARGUMENT

Appellant respectfully requests that this Court hear oral argument.

Respectfully submitted,

**Eric S. Clark ( pro se )**
1430 Dane Ave
Williamsburg, Kansas 66095
Phone: (785) 214-8904

27

## **CERTIFICATE OF COMPLIANCE**

with required PRIVACY redactions.

Appellant hereby certifies that:

1. All required privacy redactions have been made to

   the Appellant's brief.

**Eric S. Clark ( pro se )**
1430 Dane Ave
Williamsburg, Kansas 66095
Phone: (785) 214-8904

28

## **CERTIFICATE OF COMPLIANCE**

with Type-VOLUME LIMIT, Typeface Requirements, and

Type Style Requirements

Appellant hereby certifies that:

1) This brief complies with the type-volume imitation of Fed. Rules. App. P. 32(a)(7)(B) because this brief does not exceed 13,000 words (specifically contains **6,635** words), excluding the parts of the brief exempted by Fed. Rules App. P. 32(a)(7)(B)(iii).

2) This brief complies with the typeface requirements of Fed. Rules App. P. 32(a)(5) and the type style requirements of Fed. Rules App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman typeface.

**Eric S. Clark ( pro se )**
1430 Dane Ave
Williamsburg, Kansas 66095
Phone: (785) 214-8904

## <u>CERTIFICATE OF SERVICE</u>

Appellant hereby certifies that service was made by mailing

true and correct copies of the foregoing

BRIEF OF APPELLANT

by deposit in the United States Mail, Postage prepaid,

on November 15, 2019 addressed to:


J. Steven Pigg, Lauren E. Laushman
FISHER, PATTERSON, SAYLER & SMITH, L.L.P.
3550 S.W. 5th St.
Topeka, KS 66606

and to:

Alan V. Johnson
Sloan Eisenbarth Glassman McEntire & Jarboe, LLC – Topeka
534 South Kansas Avenue
Suite 1000
Topeka, KS 66603–3456

and the original and seven copies to:

Clerk, The United States Court of Appeals for the Tenth Circuit
The Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257

Eric S. Clark, 1430 Dane Ave, Williamsburg, Kansas [66095] 785-214-8904